# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KIMBERLY TERESE ASKEW,

    Plaintiff

v.

CLARK COUNTY, NEVADA, et al.,

    Defendants

Case No.: 2:18-cv-02026-APG-BNW

**Order**

[ECF Nos. 70, 79, 80, 81, 83, 84, 98]

Plaintiff Kimberly Askew sues Clark County, former Clark County Animal Control (CCAC) chief Jason Allswang, CCAC officers Stephanie Clevinger and Tiffany Bonnell, Las Vegas Metropolitan Police Department detective Sandra Southwell, and The Animal Foundation (TAF) for seizing her 18 rescue dogs.  In brief, Clevinger and Bonnell arrived at Askew's home after someone reported Askew for having several dogs at her home that appeared to be emaciated.  Southwell also responded to the scene.  The parties dispute whether Askew voluntarily allowed Southwell, Clevinger, and Bonnell into her home and voluntarily surrendered the dogs, or whether Southwell threatened Askew and coerced her consent for both the searches and the seizures.  After the dogs were seized they were taken to TAF, except two that were taken to an animal hospital and later transported to TAF.

When Askew attempted to retrieve the dogs the next day, she was told they were being impounded because criminal charges of animal cruelty were under investigation.  She posted a bond for some of the dogs to remain in TAF's care, but she could not afford to do so for all 18 dogs.  Askew thereafter filed for an injunction in state court to prevent TAF from adopting out her dogs and for their return.  That matter was eventually resolved through a partial settlement, which resulted in Askew agreeing for some of the dogs to be adopted out, and a summary

judgment order, which concluded that title to the remaining dogs passed to TAF.  Askew was eventually charged with animal cruelty for failure to provide adequate nourishment to six of the dogs.  She pled nolo contendere to two misdemeanor charges.

Askew sues the defendants for their respective roles in these events.  She asserts Fourth Amendment claims under 42 U.S.C. § 1983 against Clevinger, Bonnell, and Southwell for the search of her home, the search of her vehicle, and the seizure of her dogs.  She asserts against all defendants a Fourteenth Amendment due process claim under § 1983 and a state law conversion claim.

The parties have filed a slew of summary judgment motions (and related joinders) and Askew also moves to exclude Southwell's expert.  I grant summary judgment in favor of Clevinger, Bonnell, and Southwell on Askew's Fourth Amendment claims because those claims are barred by the rule announced in *Heck v. Humphrey*.  I grant summary judgment in favor of all defendants on Askew's due process claim because she had no right to a pre-deprivation hearing and she received all the post-deprivation process she was due.  Finally, I grant summary judgment in favor of all defendants on Askew's conversion claim because the defendants had legal justification for the seizure, detention, and ultimate disposition of the dogs.

# I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

1    The party seeking summary judgment bears the initial burden of informing the court of

2    the basis for its motion and identifying those portions of the record that demonstrate the absence

3    of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

4    burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

5    genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

6    Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

7    genuine dispute of material fact that could satisfy its burden at trial.")  I view the evidence and

8    reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of

9    Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

10   **A.  Fourth Amendment Claims (counts 1-3)**

11   Askew alleges Southwell, Clevinger, and Bonnell violated her Fourth Amendment rights

12   when they searched her house and car and then seized her 18 dogs without a warrant.  The

13   defendants move for summary judgment on a variety of grounds, including that these claims are

14   barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Askew responds that

15   *Heck* does not bar her claims because she pleaded nolo contendere, so her convictions were

16   based on her plea, not on evidence obtained in the searches and seizures.  She also argues she

17   pleaded to only two counts, but her civil claims are based on the search of her residence and car

18   and seizure of 18 dogs.

19   Under *Heck*, a plaintiff "cannot recover damages in a § 1983 suit if a judgment in favor

20   of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence . . . unless

21   the plaintiff can demonstrate that the conviction or sentence has already been invalidated."

22   *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (quotation omitted).  An unreasonable

23   search necessarily implies the invalidity of a conviction or sentence where the evidence seized

1  was an "essential element" in the criminal case. *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140

2  (9th Cir. 2005) (quotation omitted).

3        There is no dispute that Askew pleaded nolo contendere to two counts of misdemeanor

4  animal cruelty. ECF No. 98.3.  There is no evidence those convictions have been invalidated.

5  Consequently, the question is whether Askew's Fourth Amendment claims necessarily imply the

6  invalidity of her convictions.

7        The dispute over whether Askew's claims are *Heck*-barred arises out of two lines of

8  seemingly contradictory Ninth Circuit cases about the impact of guilty or nolo contendere pleas

9  under *Heck*.  In *Ove v. Gwinn*, the plaintiffs were arrested on suspicion of driving under the

10  influence. 264 F.3d 817, 820 (9th Cir. 2001).  After their arrests, blood samples were drawn by

11  employees of a government contractor. *Id.*  As relevant here, one of the plaintiffs pleaded guilty

12  and another pleaded nolo contendere to a charge of driving under the influence. *Id.*  The

13  plaintiffs thereafter sued, alleging the persons who performed the blood draws were not qualified

14  to do so. *Id.*  The district court ruled the civil claims were *Heck*-barred. *Id.* at 821.  The Ninth

15  circuit reversed, reasoning that:

16      the plaintiffs' lawsuit, even if successful, would not necessarily imply the
    invalidity of [the plaintiffs'] convictions.  Their lawsuit concerns the way in

17      which their blood was drawn.  But blood evidence was not introduced against
    them.  No evidence was introduced against them.  They pleaded guilty or nolo

18      contendere, respectively.  Their convictions derive from their pleas, not from
    verdicts obtained with supposedly illegal evidence.  The validity of their

19      convictions does not in any way depend upon the legality of the blood draws.
    Conspicuously missing from this case is any contention that [the plaintiffs'] pleas

20      were illegal, involuntary or without factual bases.

21  *Id.* at 823 (internal footnotes and emphasis omitted).

22        In *Whitaker v. Garcetti*, the plaintiffs alleged in their civil suit that the defendants

23  intentionally concealed the existence of unlawful wiretaps by forwarding information obtained

4

from the wiretaps to other officers without disclosing the source. 486 F.3d 572, 576 (9th Cir. 2007). The officers would then investigate, develop "independent" probable cause, and make an arrest based on the "independent" evidence without ever disclosing the wiretap. *Id.* Some of the plaintiffs pleaded guilty to drug possession offenses after this procedure resulted in officers obtaining search warrants for various locations where they discovered illegal drugs. *Id.* at 576-77. The plaintiffs thereafter filed suit, claiming the wiretaps were obtained through "judicial deception." *Id.* at 577-78. The district court ruled the claims were *Heck*-barred. *Id.* at 578. The Ninth Circuit affirmed, concluding that because the defendants' convictions were based on the evidence that was obtained through the challenged searches and seizures, the civil suit necessarily would imply the invalidity of the convictions.[1] *Id.* at 584; *see also Guerrero*, 442 F.3d at 703-04 (holding Fourth Amendment claims *Heck*-barred after guilty pleas to drug possession).

In *Szajer v. City of Los Angeles*, the plaintiffs pleaded no contest to one count of possession of an illegal assault weapon. 632 F.3d 607, 608 (9th Cir. 2011). They subsequently filed suit under § 1983 alleging an illegal search and seizure based on their contention that the search warrant affidavit omitted material information and misled the magistrate judge. *Id.* at 609-10. The district court ruled that the claims were *Heck*-barred. *Id.* at 610. The Ninth Circuit affirmed. *Id.* at 610-12. In doing so, the Ninth Circuit did not address whether the fact that the convictions were obtained through no contest pleas had any bearing on the issue.

A few months later, the Ninth Circuit decided *Lockett v. Ericson*, 656 F.3d 892 (9th Cir. 2011). In that case, the plaintiff was driving home from a party when his car slid off the road,

---

[1] One of the *Whitaker* plaintiffs was never convicted, so *Heck* did not bar his claims. 486 F.3d at 581.

and when he could not get it back on the road, he walked to his nearby home. 656 F.3d at 864. Officers spoke to a witness, who stated that she thought the driver was drunk. *Id.*  After learning the address of the registered owner, they went to the plaintiff's home. *Id.*  They knocked and identified themselves but received no response. *Id.*  They decided to enter to ensure the driver did not need medical assistance. *Id.*  The officers found the plaintiff (smelling of alcohol) in bed and questioned him. *Id.*  The plaintiff failed a field sobriety test, so the officers arrested him. *Id.*

The plaintiff was charged with misdemeanor driving under the influence and driving with .08 or higher blood alcohol level. *Id.*  The plaintiff moved to suppress, arguing that the evidence against him was seized without a warrant. *Id.* at 894-95.  After the district denied his suppression motion, he pleaded nolo contendere to a lesser violation. *Id.* at 895.  He then filed a civil suit, which the district court ruled was *Heck*-barred. *Id.*  On appeal, the Ninth Circuit reversed, concluding the case was governed by *Ove*. *Id.* at 896-97.

More recently, the Ninth Circuit addressed the seeming inconsistency between *Whitaker* and *Szajer* on the one hand, and *Ove* and *Lockett* on the other, in *Byrd v. Phoenix Police Department*, 885 F.3d 639 (9th Cir. 2018).  In that case, the plaintiff sued police officers for allegedly illegally searching him and then using excessive force after stopping him for riding a bicycle without a headlight. 885 F.3d at 640-41.  He later pleaded guilty to conspiracy to possess a dangerous drug. *Id.* at 641.  He then filed a § 1983 suit for, among other things, Fourth Amendment violations, which the district court concluded were *Heck*-barred. *Id.* at 643.  The Ninth Circuit, following *Ove*, concluded that "[b]ecause Byrd's conviction resulted from a plea agreement and [the plaintiff] alleged no facts in his complaint suggesting that the plea was not knowing and voluntary, success in the § 1983 action would not affect his conviction." *Id.*

1    The *Byrd* defendants argued that the claims were *Heck*-barred under *Szajer* and *Whitaker*.

2    *Id.* at 644-45.  The Ninth Circuit concluded those cases were "distinguishable" because the

3    plaintiffs were convicted under guilty and no contest pleas to crimes of possession, and the

4    evidence supporting those convictions was found in the searches that were subsequently

5    challenged in the § 1983 lawsuits. *Id.* (stating that in *Whitaker* and *Szajer*, "the plaintiffs' civil

6    suits challenged the search and seizure of the evidence upon which their criminal charges and

7    convictions were based" (alteration and quotation omitted)).  In contrast, the *Byrd* plaintiff's

8    conviction was based on drugs that "he threw when the police were questioning him, which they

9    subsequently recovered a distance away from where he was at." *Id.* at 645 (internal quotation

10   marks omitted).  But his civil suit was based on allegations that the police illegally searched him

11   and used excessive force. *Id.*  Consequently, his civil claims "ha[d] nothing to do with the

12   evidentiary basis for the conspiracy conviction," and therefore would not necessarily imply the

13   invalidity of his conviction. *Id.* (citation omitted).

14        As Magistrate Judge Cobb explained in synthesizing these decisions, "[f]ollowing *Byrd*,

15   it seems that in the Ninth Circuit, whether a section 1983 claim will be *Heck*-barred when the

16   underlying conviction was obtained pursuant to a no contest (or guilty) plea depends on the

17   allegations in the section 1983 action and the evidentiary basis of the conviction." *Best v.*

18   *Beresford*, No. 3:18-cv-00554-RCJ-WGC, 2019 WL 1461921, at *10 (D. Nev. Feb. 27, 2019),

19   *report and recommendation adopted*, No. 3:18-cv-00554-RCJ-WGC, 2019 WL 1472360 (D.

20   Nev. Apr. 2, 2019).  A "§ 1983 action is *Heck* barred when successfully proving the plaintiff's

21   § 1983 claims would fatally undermine the factual basis of an outstanding plea-based conviction,

22   because under such circumstances the § 1983 action challenges the validity of the outstanding

23

1   conviction." *Id.* (quoting *Taylor v. County of Pima*, No. cv-15-00153-TUC-RM, 2017 WL

2   6550590, at *8 (D. Ariz. Mar. 16, 2017)).

3        Here, Askew's Fourth Amendment claims would necessarily imply the invalidity of her

4   nolo contendere pleas because, like *Whitaker* and *Szajer*, she challenges the searches and

5   seizures of the evidence on which her convictions were based.  As part of her plea, Askew signed

6   a form stating that she was "aware that by pleading guilty or nolo contendere [sic] I am admitting

7   the state could factually prove the charge[s] against me." ECF No. 70-5 at 154.[2]  Askew pleaded

8   to cruelty to the very animals that were observed in the searches and then seized.  Those dogs

9   were photographed at the time to show their condition and then taken to an animal hospital or

10  TAF, where they were medically evaluated, treated for various ailments, and gained weight in

11  TAF's possession.[3] *See, e.g.*, ECF Nos. 70-2; 70-3; 70-4 at 47-52; 70-5 at 15.  Absent evidence

12  of the animals' condition, there would be no factual basis for the charges or Askew's pleas to

13  those charges.  For example, Southwell testified that the dogs' appearance alone did not support

14  an arrest for animal cruelty because there may have been medical reasons why the dogs were

15  thin. ECF No. 73-2 at 6.

16

17

---

18  [2] I deny Askew's objection to the animal cruelty admonishment of rights.  Evidence need not be
    presented in admissible form at summary judgment, so long as the evidence would be admissible
19  at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  Notably, Askew does not
    object that the admonishment is inauthentic or that she did not sign it, only that it is not
20  authenticated.

21  [3] I deny Askew's objection to the photographs as unauthenticated.  Clevinger authenticated the
    photographs in an interrogatory response. ECF No. 70-1 at 72.  Moreover, evidence need not be
22  presented in admissible form at summary judgment, so long as the evidence would be admissible
    at trial. *Fraser*, 342 F.3d at 1036-37.  Clevinger, Bonnell, and Southwell could testify to what
23  they observed that day, that photographs were taken, and that the photographs accurately depict
    the dogs on that day.  Askew does not object that the photographs are inauthentic or do not
    accurately depict the scene and the dogs, only that they are not authenticated.

Askew argues that she pleaded guilty to only two charges, so even if she is *Heck*-barred as to the dogs identified in those two charges, she should not be barred for her claims related to the other 16 dogs.  But all of the dogs were either in the car or in the house and were all seized at the same time, under the same factual circumstances.  Her pleas were based on one dog from the house and one dog from the car. ECF Nos. 70-5 at 14 (Southwell identifying 15 dogs inside the house); *id.* at 114 (Askew testifying that Jester, Dahlia, and Scarlet were the three dogs in the car); *id.* at 148-49 (second amended criminal complaint identifying count 4 as Jester and count 6 as McDaniel); *id.* at 151-52 (pleas to count 4 for Jester and count 6 for McDaniel).  Thus, a finding that either search or any seizure was unlawful would necessarily imply the invalidity of her convictions. *See Szajer*, 632 F.3d at 612 (rejecting the plaintiffs' argument that *Heck* did not apply where "they are challenging only the search of their gun shop, not their conviction for possession of the unregistered weapon found in their home," because "the searches of their residence and gun shop were based on the same search warrant and supporting affidavit").  I therefore dismiss Askew's Fourth Amendment claims in counts one through three of her amended complaint, without prejudice to file a new lawsuit if her convictions are later invalidated.[4] *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995).

/ / / /

---

[4] Askew's amended complaint also references the Fourteenth Amendment in relation to the first three claims and the Fifth Amendment in relation to the fourth claim. ECF No. 39 at 10-14. Askew concedes the Fifth Amendment does not apply. ECF No. 73 at 24.  She does not concede the Fourteenth Amendment does not apply, although she does not explain what her Fourteenth Amendment claim would be in relation to the first three claims.  The Fourth Amendment, not the Fourteenth, governs the first three claims. *Hall v. City of L.A.*, 697 F.3d 1059, 1068 (9th Cir. 2012) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." (quotation omitted)).

### B. Fourteenth Amendment (count 4)

Askew alleges the defendants deprived her of due process because she had a property interest in her dogs, but they were taken from her without notice and a meaningful opportunity to be heard.  She alleges the Clark County Code allows for summary seizure of her animals and deprives those who lack the means to post a bond or initiate pro se court proceedings for a meaningful opportunity to be heard. ECF No. 39 at 14-15.  As part of her claim, she alleges the impound process may be triggered by the arbitrary and capricious decision of a police officer or animal control officer in deciding whether to prosecute for animal cruelty. *Id.*  Finally, she alleges the Clark County Code under which the defendants impounded the animals conflicts with and is superseded by Nevada state law. *Id.*

The defendants move for summary judgment on this claim on a variety of grounds.  All defendants contend that no pre-deprivation process is required under these circumstances, that Askew actually received all the process she was due, and that the Clark County Code provides adequate post-deprivation process.  Southwell and TAF also make other arguments specific to them.  Askew opposes and moves for summary judgment, seeking a declaration that Clark County ordinance 10.32.020 is unconstitutional.

To establish her due process claim, Askew must show: "(1) a property interest protected by the Constitution; (2) a deprivation of the interest by the government; and a (3) lack of required process." *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 974 (9th Cir. 2002).  Procedural due process generally requires "notice and an opportunity to be heard." *Franceschi v. Yee*, 887 F.3d 927, 935 (9th. Cir. 2018) (quotation omitted).  The nature of the procedures required "in any given case is a function of context." *Id.* (quotation omitted).  I use the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what process is due.

1    *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015).  Under *Mathews*, I balance: "(1) the

2    private interest affected; (2) the risk of erroneous deprivation through the procedures used, and

3    the value of additional safeguards; and (3) the government's interest, including the burdens of

4    additional procedural requirements." *Id.*

5            1.  Property Interest

6            The defendants appear to concede that dog owners generally have a legally protectable

7    interest in their dogs, and that is consistent with Nevada law and the Clark County Code.[5]  The

8    defendants argue, however, that because the Clark County Code prohibits someone from owning

9    more than three dogs (absent permits and exceptions not applicable here), Askew had no legally

10   protectable interest in her 18 dogs.  Askew responds that she has a property interest in all 18

11   dogs, but, at a minimum, she has a property interest in three of the dogs because it was lawful for

12   her to have three dogs.

13           Clark County Code 10.08.130 provides that "[n]o person shall keep more than three dogs

14   over four months of age . . . at any one place, or an any premises, or in any one residence unless

15   otherwise specified in this chapter . . . ."  No genuine dispute remains that Askew was in

16   violation of this ordinance by having 18 dogs in her house.  But the defendants never explain

17   why Askew lacks a property interest in three of the dogs, given that she was legally entitled to

18   have three dogs.  The case on which they rely does not support their position because the

19   plaintiff in that case had no legal right to own any of the birds he was keeping on the sidewalk.

20

21   _____

22   [5] *See* Nev. Rev. Stat. § 193.021 (defining personal property to include "dogs and all domestic
     animals and birds"); Nev. Rev. Stat. § 574.100(9) (providing that a court may order a person
     convicted of animal cruelty to "surrender ownership or possession of the mistreated animal");

23   Clark County Code 10.04.230 (defining "owner" as "any person owning, keeping possessing,
     harboring, or having the care, custody or control of any animal"); Clark County Code 10.32.020
     (providing for when an animal becomes an animal shelter's "property").

*See Recchia v. City of L.A. Dep't of Animal Servs.*, No. CV 12-7468 DDP (MRW), 2019 WL 6703542, at *5 (C.D. Cal. Sept. 19, 2019) ("Plaintiff's legal inability to own the birds eliminated his ability to maintain a constitutional claim regarding the warrantless seizure and lack of subsequent procedural protection for their taking."). Consequently, Askew had a property interest in at least three of her dogs.

### 2.  Pre-Deprivation Process

Askew argues the ordinance is unconstitutional because it does not afford persons the ability to challenge a law enforcement or animal control officer's "on-the-spot finding of animal cruelty." ECF No. 84 at 9 (internal quotation marks omitted). The defendants contend that the lack of a pre-deprivation hearing does not violate due process because quick action is needed where animal cruelty is suspected, the risk of erroneous deprivation is low, and adequate post-deprivation procedures can be provided.

Askew was not entitled to a pre-deprivation hearing. As explained in *Recchia v. City of Los Angeles Department of Animal Services*, "the interest at stake is an animal or pet owner's property interest in their animals and in having the pets or animals with them." 889 F.3d 553, 561-62 (9th Cir. 2018). But "the risk of erroneous deprivation here appears fairly low, generally," because animal control officers "are executing the seizure and so have some expertise in the factors that would warrant such a seizure." *Id.* at 562. To the extent Southwell, a police officer, was involved in the seizures, that "does weigh somewhat against the expertise argument. But it appears that generally these seizures will be executed by persons with training in animal welfare and health assessment." *Id.* "Finally, and . . . dispositively here, there is a strong general governmental interest in being able to seize animals that may be in imminent danger of harm due to their living conditions, may carry pathogens harmful to humans or other animals, or may

1  otherwise threaten public safety without first needing to have a hearing on the subject." *Id.*; *see*

2  *also Reams v. Irvin*, 561 F.3d 1258, 1264 (11th Cir. 2009) (holding that no pre-deprivation

3  hearing was required before seizing malnourished horses because "the state's interest in

4  preventing the inhumane treatment of animals is undeniably substantial and would be

5  significantly compromised if the state were to require a hearing before impounding malnourished

6  equines").  Accordingly, Askew was not entitled to a pre-deprivation hearing.

7                          **3.  Post-Deprivation Process**

8        Askew contends she had no meaningful opportunity to contest the imposition or amount

9  of the bond.  She also contends there is no requirement for a post-deprivation hearing on either

10  the bond amount or the seizure and retention of the animals.  Finally, Askew contends that the

11  ordinance conflicts with state law and thus is preempted under Nevada law.  The defendants

12  respond that Askew was given notice of the impoundment and advised how she could challenge

13  it, that Askew did so by (untimely) filing a lawsuit in justice court, and the defendants took no

14  action to adopt out the dogs until after that lawsuit concluded in their favor.  They thus contend

15  Askew received notice and a meaningful opportunity to be heard.  They also argue the ordinance

16  does not conflict with and is not preempted by state law.

17        Askew received all the process she was due.  The day after her dogs were seized, she was

18  given a notice of impoundment that advised her to either post a bond or petition the court for

19  return of the dogs. ECF No. 81-3 at 45.  Despite Askew not timely posting a bond for all of the

20  dogs and not timely petitioning a court, TAF retained the dogs. ECF No. 80-2 at 4-5; 60-81.

21  Askew petitioned a court about a month and a half later. ECF No. 81-3 at 51-85.  That court

22  issued a temporary restraining order precluding TAF from disposing of the dogs in any manner.

23  *Id.* at 87-88.  The court held two hearings on her petition. *Id.* at 101-40; ECF No. 81-4 at 17-67.

1   The court also ruled on summary judgment. ECF No. 81-4 at 101-04.  Askew appealed to the

2   Supreme Court of Nevada, which dismissed her appeal after she failed to oppose a motion to

3   dismiss. ECF No. 79-7.  Askew petitioned for rehearing and rehearing en banc, which the

4   Supreme Court of Nevada denied. ECF Nos. 79-8; 79-9.

5        Although Askew takes issue with how the state courts resolved her petition, the question

6   for due process purposes is not whether the state court system got it right, but instead whether

7   Askew was afforded adequate notice and opportunity to be heard. *See Recchia*, 889 F.3d at 561-

8   62.  In the state court action, Askew could and should have raised all the arguments she has

9   presented to this court regarding the return of the dogs, the amount of the bond, the veterinary

10   care of the animals, and the constitutionality of the ordinance.[6]  And to the extent she thought the

11   state court trial judge got it wrong, she could (and did) appeal to the Supreme Court of Nevada,

12   and she could have appealed to the Supreme Court of the United States to correct the state

13   courts' allegedly erroneous decisions.  Askew thus received meaningful notice and a meaningful

14   opportunity to be heard.  Consequently, I grant summary judgment in the defendants' favor on

15   Askew's due process claim.[7]

16        Because Askew received all the process she was due, she will not be heard to argue that

17   Clark County Code 10.32.020 is constitutionally deficient because it lacks due process

18   guarantees. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610-12 (1973); *Wiren v. Eide*, 542 F.2d

19   757, 762 (9th Cir. 1976).  I therefore deny Askew's motion for summary judgment regarding the

20

---

21   [6] Askew in fact raised issues in state court regarding the bond, veterinary care, and constitutional
     claims regarding the Fourth Amendment and due process. *See* ECF Nos. 79-1; 79-3 at 3-4; 79-5;
22   80-1 at 124-63; 80-2 at 7-57.  Her disagreement with how the state courts resolved her case does
     not mean she was denied due process.

23   [7] Additionally, Southwell is entitled to qualified immunity because Askew does not identify any
     clearly established law that would have put Southwell on notice that her actions violated due
     process. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

statute's facial constitutionality.  In response to Askew's motion, the Clark County defendants

filed an untimely second motion for summary judgment seeking a declaration of the statute's

constitutionality. ECF No. 98.  Because this second motion for summary judgment is both

untimely and not based upon an affirmative counterclaim for declaratory relief, I deny that

motion as well. *See* ECF Nos. 36 (dispositive motion deadline May 18, 2020); 41 & 43 (answers

lacking a counterclaim); 98 (defendants' untimely second motion for summary judgment for

declaratory relief).

### C.  Conversion (count 5)

Askew alleges the defendants exercised wrongful dominion over her dogs when they

unlawfully took the dogs without probable cause and refused to return them to her. ECF No. 39

at 16-17.  She also alleges TAF held the dogs out as its property when it listed the dogs as

available to adopt or to be sent to rescue organizations before the state court ruled that title

transferred to TAF. *Id.*

"Conversion is a distinct act of dominion wrongfully exerted over another's personal

property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or

defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev.

2000) (en banc) (quotation omitted).  Conversion "is an act of general intent, which does not

require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.*

However, "a conversion imports an unlawful act, or an act which cannot be justified or excused

in law." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958).  "Whether a conversion has occurred

is generally a question of fact for the jury." *Evans*, 5 P.3d at 1048.

////

////

1       1.  Southwell

2       Southwell contends she had authority under Clark County Code 10.32.020(A) to seize the

3   dogs because she had probable cause to believe Askew was treating the dogs cruelly.  Askew

4   responds that Southwell could not determine at the time of seizure that the dogs had been treated

5   cruelly and several of them did not appear emaciated.

6       Southwell's participation in the dogs' seizure was not wrongful because she had a lawful

7   basis to seize the dogs under Clark County Code 10.32.020(A).  That ordinance provides that an

8   "animal control officer or any police officer in the county while on duty shall, upon discovering

9   any animal which is being treated cruelly, take possession of and impound it."  Southwell also

10  had a basis to seize the dogs under Clark County Code 10.08.130, which prohibits keeping more

11  than three dogs at a residence.  Even viewing the facts in the light most favorable to Askew, no

12  reasonable jury could conclude that Southwell lacked a lawful basis to seize the animals given

13  Southwell's testimony, Clevinger's testimony (including that all dogs needed to be seized

14  because of the risk that the healthier looking ones would be subject to the same conditions as the

15  emaciated ones), the photos of the dogs, the fact that Askew was bound over for trial on the

16  animal cruelty charges after a preliminary hearing in state court, and the presence of 18 dogs at

17  the residence. *See, e.g.*, ECF Nos. 70-1 at 8-26, 50-55; 70-4 at 124-27; *see also* Restatement

18  (Second) of Torts § 265 (1965) ("One is privileged to commit an act which would otherwise be a

19  trespass to a chattel or a conversion if he is acting in discharge of a duty or authority created by

20  law to preserve the public safety, health, peace, or other public interest, and his act is reasonably

21  necessary to the performance of his duty or the exercise of his authority.").[8]

22

23  _____

[8] Because I grant summary judgment in favor of Southwell on all of Askew's claims, I need not
resolve Askew's motion to exclude Southwell's police practices expert. ECF No. 83.

2.  TAF and Clark County

TAF contends that it is not liable because it complied with court orders to retain and then adopt out the dogs.  TAF also argues it is not liable because it complied with a presumptively valid Clark County ordinance in holding the dogs after impoundment and during investigation of animal cruelty charges.  Clark County, Allswang, Bonnell, and Clevinger argue that there was no wrongful dominion because the animals were properly impounded on suspicion of cruelty and the state court subsequently approved of the dogs' disposition through the state court proceedings.[9]

Askew does not dispute that TAF cannot be liable for holding the dogs while under court order to do so.[10]  Instead, she argues TAF (1) held the dogs when she came back to get them the next day pursuant to what she contends is an unconstitutional ordinance and before a court order was entered and (2) held the dogs out as TAF's property when it placed some of the dogs on a transfer list on TAF's website before the court ruled that the dogs were TAF's property.  She also argues the Clark County defendants deprived her of due process by seizing and detaining the dogs.

With respect to the initial seizure of the dogs, as stated above, no genuine dispute remains that the dogs were seized with lawful justification.  With respect to the impoundment and detention of the dogs when Askew came back the next day, the Supreme Court of Nevada has not specifically addressed whether the "wrongful" element of conversion is met when the

---

[9] The Clark County defendants again argue that Askew had no property right in the dogs.  As stated with respect to Askew's due process claim, she has a property interest in at least three of her dogs.

[10] *See* Restatement (Second) of Torts § 266 (1965) ("One is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face.").

1  defendant's act is legally justified by an ordinance that has not been ruled unconstitutional at the

2  time the defendant acted.

3      I predict[11] that the Supreme Court of Nevada would hold that a defendant's acts are

4  justified in law within the meaning of Nevada's law on conversion when the defendant is

5  executing a presumptively valid ordinance that has not been ruled unconstitutional at the time the

6  defendant acted.[12]  Under Nevada law, ordinances have a presumption of validity. *See*

7  *Sustainable Growth Initiative Comm. v. Jumpers, LLC*, 128 P.3d 452, 465 (Nev. 2006).  The

8  Restatement (Second) of Torts § 265 recognizes a "privilege[] to commit an act which would

9  otherwise be a trespass to a chattel or a conversion" if the alleged tortfeasor is "acting in

10 discharge of a duty or authority created by law to preserve the public safety, health, peace, or

11 other public interest, and his act is reasonably necessary to the performance of his duty or the

12 exercise of his authority."  The Supreme Court of Nevada looks to the Restatement (Second) of

13 Torts for guidance. *See, e.g., Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 nn.32-33

14 (Nev. 2006); *see also* Nev. Rev. Stat. § 41.032(1) (providing immunity for claims brought

15 against "an officer or employee of the State or any of its agencies or political subdivisions which

16 is . . . [b]ased upon an act or omission of an officer, employee or immune contractor, exercising

17

---

18 [11] When a federal court interprets state law, it is bound by the decisions of the state's highest
   court. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir.
19 2004).  Where the state's highest court has not decided the issue, a federal court must predict
   how that court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).  I may use
20 "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance
   Co.*, 379 F.3d at 560 (quotation omitted).

21 [12] I need not address whether this rule would apply where the ordinance at issue "is patently
22 violative of fundamental constitutional principles" because Clark County's ordinance does not
   fall into that category. *See Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994)
23 (noting that "[w]here a statute authorizes official conduct which is patently violative of
   fundamental constitutional principles, an officer who enforces that statute is not entitled to
   qualified immunity" for a 42 U.S.C. § 1983 claim).

due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction").  Allowing a conversion claim under these circumstances would put the defendants in the problematic position of choosing between executing the law and paying damages as a result, or refusing to execute the law and facing the legal consequences of that decision. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (stating, in the context of qualified immunity, that a "policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does") (citation omitted).  Consequently, I predict the Supreme Court of Nevada would hold that a person who is executing a presumptively valid ordinance acts with legal justification within the meaning of Nevada's conversion law, even if the ordinance is later held to be unconstitutional.

As a result, no reasonable jury could find that TAF and the Clark County defendants engaged in a wrongful act when they impounded the dogs and refused to surrender them to Askew because they were executing a presumptively valid ordinance and consequently were justified in law.  And no genuine dispute remains that TAF and the Clark County defendants did not dispose of the dogs until after Askew received due process through the state court proceedings and the state court ruled that title passed to TAF. *See* Restatement (Second) of Torts § 266 (1965) ("One is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face.").  Askew therefore has not shown that the defendants' acts were not legally justified.

Finally, even if TAF listed some dogs on a transfer or adoption list before the state court ordered that title passed to TAF,[13] TAF did not actually transfer or adopt out any dogs until after the state court orders allowed it to do so.  Askew was not damaged by that action so it cannot be the basis for a claim. *Edwards*, 130 P.3d at 1288 ("[T]he law does not concern itself with trifles.").  I therefore grant TAF's motion for summary judgment on Askew's conversion claim.

## II.  CONCLUSION

I THEREFORE ORDER that defendants Clark County, Tiffany Bonnell, and Stephanie Clevinger's motion for summary judgment re: search and seizure claims **(ECF No. 70)** and defendant Sandra Southwell's joinder **(ECF No. 72) are GRANTED**.

I FURTHER ORDER that the defendants' motions for summary judgment on plaintiff Kimberly Askew's fourth and fifth causes of action **(ECF Nos. 79, 80, 81) are GRANTED**.

I FURTHER ORDER that plaintiff Kimberly Askew's motion for partial summary judgment **(ECF No. 84) is DENIED**.

I FURTHER ORDER that plaintiff Kimberly Askew's motion in limine **(ECF No. 83) is DENIED as moot**.

I FURTHER ORDER that defendants Clark County, Tiffany Bonnell, and Stephanie Clevinger's motion for summary judgment **(ECF No. 98) is DENIED**.

/ / / /

/ / / /

/ / / /

/ / / /

---

[13] TAF explained it did so because Askew's dogs had special needs and those types of dogs are more difficult to place, so the longer the lead time in setting up a potential transfer, the higher the likelihood of a positive outcome for the dog. ECF No. 112-1 at 3-8, 11-12.

1    I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants and

2  against the plaintiff and to close this case.

3    DATED this 12th day of February, 2021.

4

5    _____

6    ANDREW P. GORDON
     UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

21